FILED

2018 Nov-16  AM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES ROGERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **WEST MORGAN-EAST** | ) | _____ |
| **LAWRENCE WATER AND** | ) | |
| **SEWER AUTHORITY; 3M** | ) | |
| **COMPANY; DYNEON, L.L.C.;** | ) | |
| **AND DAIKIN AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, James Rogers (hereinafter "Plaintiff") in the above-styled action, by and through his undersigned counsel, and hereby brings this Complaint against West Morgan-East Lawrence Water and Sewer Authority, 3M Company, Dyneon, L.L.C., and Daikin America, Inc., and allege as follows:

## PARTIES

1.      Defendant West Morgan-East Lawrence Water and Sewer Authority (hereinafter referred to as "WMEL"), is a public corporation formed pursuant to Ala. Code § 11-88-3, *et seq.*, with its principal place of business in Morgan County, Alabama. WMEL provides domestic water supplies to its own customers in Morgan and Lawrence County, Alabama.

2.     Defendant 3M Company (hereinafter referred to as "3M"), is a foreign corporation doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

3.     Defendant Dyneon, L.L.C. (hereinafter referred to as "Dyneon"), is a wholly owned subsidiary of 3M, and is a foreign corporation, doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

4.     Defendant Daikin America, Inc. (hereinafter referred to as "Daikin"), is a foreign corporation doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

5.     Plaintiff is a resident of Lawrence County, Alabama, and at all times pertinent to this Complaint, is or has been a customer of WMEL. Plaintiff utilized water provided by WMEL for drinking, cooking, planting, and other domestic purposes.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332(a), because Plaintiffs are citizens of the State of Alabama, most of the named Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e), in that a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Alabama.

## FACTS

8.     Defendants 3M, Dyneon, and Daikin, are three of the major manufacturers and/or users of Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), and related chemicals.

9.     All Defendants have facilities located in Decatur, Alabama.

10.    3M and Dyneon are the present owners and operators of manufacturing and disposal facilities in Decatur, Alabama, which continue to release PFOA, PFOS, and related chemicals into groundwater and surface water through which the chemicals are discharged into the Tennessee River and its tributaries. Defendants manufactured or used these and other chemicals at their facilities and disposed of hazardous and solid waste containing these chemicals in a landfill and a sludge incorporation area on their property and on adjacent property.

11.    3M discharged wastewater containing PFOA, PFOS, and related chemicals from its on-site wastewater treatment plant into tributaries of the Tennessee River.

12.     3M incorporated sludge from the on-site wastewater treatment plant by means of subsurface injection in an on-site area designated as the sludge incorporation area. In addition, 3M discharged wastewater containing PFOA, PFOS, and related chemicals to the Decatur Utilities Dry Creek Wastewater Treatment Plant.

13.     Dyneon's fluoroelastomer facility is located on the southern portion of the 3M Decatur facility.  Dyneon's fluroelastomer operations in Decatur had previously been part of 3M's manufacturing processes at the Decatur facility.

14.     The processed wastewater from Dyneon's operations has been managed through 3M's wastewater treatment system and discharged into the Tennessee River.

15.     The Dyneon sanitary wastewater has been combined with the 3M sanitary wastewater and discharged to the Decatur Utilities Wastewater Treatment Plant.

16.     Daikin manufactures specialty chemicals, including tetrafluroethylene (TFE) and hexafluoropropylene (HFP) fluropolymers at its Decatur, Alabama plant and used PFOA in its manufacturing process. The facility discharges wastewater and site stormwater into the Tennessee River. Daikin's Decatur plant was constructed on land that previously served as a site for the land application of the adjacent 3M biosolids contaminated with PFOA, PFOS, and related chemicals. Daikin discharges

4

sanitary wastewater contaminated with PFOA, PFOS, and related chemicals to the Decatur Utilities Wastewater Treatment Plant.

17.     As stated above, WMEL provides water to customers in Morgan and Lawrence County, Alabama. WMEL's source of water is the Tennessee River, and as a result of the other Defendants' discharge of PFOA, PFOS, and other related chemicals into the Tennessee River and its tributaries, WMEL has distributed and continues to distribute water containing these chemicals to Plaintiff.

18.     The human health risks caused by exposure to low levels of PFOA, PFOS, and related chemicals include various forms of cancer, thyroid disease, and ulcerative colitis. The stable carbon-fluoride bonds that make PFOA and PFOS such pervasive industrial and consumer products also result in their persistence. There is no known environmental breakdown mechanism for these chemicals. They are readily absorbed into the human body and have a tendency to accumulate with repeated exposure.

19.     The association between exposure to these chemicals and certain cancers has been reported by the C8 Health Project (hereinafter referred to as "the C8"), an independent science panel charged with reviewing the evidence linking PFOA, PFOS, and related chemicals to the risk of disease based on health research carried out by the science panel in the Mid-Ohio Valley population exposed to these

chemicals as a result of releases from an E. I. du Pont de Nemours and Company chemical plant, as well as other published scientific research.

20.     The C8 specifically listed kidney cancer as having a "probable link" to PFOA exposure. Epidemiological studies of workers exposed to PFOA support the association between PFOA exposure and kidney cancer. Rodent studies also support the link with cancer. The majority of a United States Environmental Protection Agency (hereinafter referred to as "EPA") science advisory board expert committee recommended in 2006 that PFOA be considered "likely to be carcinogenic to humans."

21.     In 2009, the EPA published provisional drinking water health advisories for PFOA and PFOS, which are currently under review. The advisory for PFOA is 0.4 µg/L (0.4 ppb) and for PFOS is 0.2 µg/L (0.2 ppb).

22.     In 2014, the EPA released a draft of its proposed "reference dose" for PFOA, which is an estimate of how much a person can safely consume daily over a lifetime. That proposed reference dose would translate to a legal limit in drinking water for PFOA of 0.1 ppb, which is one quarter of the 2009 advisory level.

23.     3M has long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals, and still it knowingly and intentionally continued to discharge these chemicals into the Tennessee River in Decatur, Alabama, 13 miles from the water supplies used by Plaintiff.

24.    3M has known for at least 35 years that PFOA, PFOS, and related chemicals persist in the environment and accumulate in the bodies of humans, fish, and test animals.

25.    3M has known for at least 35 years that PFOA, PFOS, and related chemicals are toxic.

26.    3M has known for at least 14 years that PFOA, PFOS, and related chemicals are not effectively treated by conventional wastewater treatment plan processes and are discharged to surface waters in the effluent and also accumulate in the sludge from wastewater treatment processes.

27.    The EPA took regulatory action on March 11, 2002, and December 9, 2002, by publishing two significant new use rules under the Toxic Substances Control Act to limit future manufacture of PFOA, PFOS, and related chemicals.

28.    The EPA and the Alabama Department of Environmental Management have identified Defendants' facilities as sources of PFOA and PFOS contamination in the Tennessee River in and around Decatur, Alabama, including surface water, porewater, sediments, and fish. The primary source is the 3M facility, with the high levels of POFA and PFOS in groundwater migrating into the Tennessee River.

29.    Based on the contamination in the Tennessee River, The Alabama Department of Environmental Management has placed Wheeler Reservoir from five (5) miles of Elk River to the Joe Wheeler Dam on the state's impaired waters list for

PFOS contamination impairing swimming and fish and wildlife use. This includes the area in which WMEL takes water from the Tennessee River.

30.    The Alabama Department of Public Health has issued a fish consumption advisory for portions of Wheeler Reservoir and its tributaries based on contamination of fish with PFOS, including: Baker's Creek embayment at Wheeler Reservoir (Morgan County), Wheeler Reservoir, Tennessee River Mile 303 to 296, area south of the main river channel (Morgan County). This includes the area between Wheeler Dam and River Mile 296 where WMEL takes water from the Tennessee River and provides it to their customers as water utilities.

31.    Concentrations of PFOA as high as 4,980 ppb and PFOS as high as 3,890 ppb have been found in groundwater on the 3M site along the south bank of the Tennessee River.  Porewater from the bottom of the river bed near the 3M facility, which is groundwater discharging into the river, showed average concentrations of PFOA from 0.0977 to 70.4 ppb.

32.    Sediment concentrations in the river have been found as high as an average of 24.1 ppb PFOA, and surface water concentrations as high as an average of 0.420 ppb PFOA at one monitoring site. PFOS concentrations for single samples collected in the lower, middle and upper reaches of the confluence area where Bakers Creek flows into the Tennessee River were 0.450, 0.691 and 0.0237 ppb, respectively.

33.     Plaintiff receive or has received his water and other water utilities from WMEL. WMEL's source for the water it supplies to Plaintiff is an intake in the Tennessee River (Wheeler Reservoir) approximately 13 miles from 3M's manufacturing facilities. The other water utilities in the area purchase water from WMEL to distribute to their customers.

34.     As a direct and proximate result of 3M, Dyneon, and Daikin discharging PFOA, PFOS, and related chemicals into the Tennessee River from their manufacturing facilities and waste disposal operations from the water intake of WMEL, the water supplied by WMEL to Plaintiff was and is contaminated with PFOA, PFOS, and related chemicals.

35.     PFOA was detected in all of the finished water samples collected in 2005-2006 from WMEL Water Treatment Plant, about 13 miles from the 3M plant, with concentrations ranging from 0.0442 to 0.155 ppb.

36.     WMEL began testing for PFOA and PFOS in its water supply in 2009 and has consistently found PFOA levels at or near 0.1 ppb and PFOS levels at or near 0.19 ppb, which is approximately 0.2 ppb, or the current EPA advisory level for PFOS. WMEL had knowledge of these levels while they continued to supply the contaminated water to Plaintiff.

37.     3M, WMEL, and remaining Defendants knew in August of 2009 that the levels for safe drinking water standards they implemented were inadequate to protect Plaintiffs and that under new proposed standards, the PFOS and PFOA levels in the WMEL water supply were dangerously high.

38.     Plaintiff has had exposure to PFOA as a result of consuming water contaminated by Defendants' water and chemicals.

39.     Exposure and elevated levels of PFOA in Plaintiff's blood is sufficient to cause many of the health effects reported in recent studies, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

40.     Plaintiff was diagnosed with Renal Cell Carcinoma.

41.     Plaintiff does not have a family history of Renal Cell Carcinoma.

42.     As a result of his ongoing exposure to drinking water containing harmful levels of PFOA, PFOS, and related chemicals from 3M, Dyneon, Daikin, and WMEL's facilities, Plaintiff has sustained injuries and experienced severe pain and suffering.

43.     Defendants knew that their actions contaminated the water of the Tennessee River and that it was used for public consumption, yet failed to warn Plaintiff of the presence of these chemicals until Plaintiff sustained irreparable injuries.

44.     To this day, Defendants still deny the harmful effects of PFOS and PFOA.[1]

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/WILLFULNESS/RECKLESSNESS

45.     Defendants owe Plaintiff a duty to exercise due and reasonable care in the manufacturing, use, and disposal operations to prevent the discharge of toxic chemicals, including PFOA, PFOS, and related chemicals into the water supply.

46.     Defendants owe Plaintiff a duty to exercise due and reasonable care in the supplying of clean, non-contaminated, drinkable water and other water utilities.

47.     Defendants breached the duties owed to Plaintiff, and under the circumstances, Defendants' breaches constitute negligent, willful and/or reckless conduct.

48.     As a direct, proximate and foreseeable result of Defendants' conduct, practices, actions, and inactions, Plaintiff has been caused to suffer, and will continue to suffer from terminal kidney cancer.

---

[1]Due to this continuous, ongoing, and fraudulent denial and/or concealment (3M knew thirty-five years ago that the chemicals are harmful to human health, yet still publically states that Plaintiff are not at risk of any detrimental health effects), Plaintiff's lawsuit is timely under the "discovery rule" of Alabama in that the earliest they could have discovered the injuries they suffered was November 15, 2016, the date upon which Peter Grevatt, the director of the EPA clarified the drinking water Health Advisory Standards for PFOA and PFOS.  Furthermore, Defendants have engaged and continue to engage in tortious activities that have caused, and continue to cause harm to the Plaintiff.  Defendants, to this day, still deny the link between the chemicals and any health effects.  *See* https://theintercept.com/2018/07/31/3m-pfas-minnesota-pfoa-pfos/ *last accessed November 16, 2018 (wherein 3M states, "the presence of PFAS in blood does not mean that an individual's health has been harmed and does not mean that there is a risk of adverse health effects").

49.     Therefore, Plaintiff claims money damages in the amount that will fairly and reasonably compensate him for the harm caused by Defendants. In addition, Plaintiff claims damages for mental anguish, and pain and suffering, in an amount that is fair and reasonable to be determined by a jury in consideration of the negligent, willful, and reckless conduct of Defendants.

## COUNT II
## NUISANCE

50.     Plaintiff owns and resides in property served by WMEL and the Water Utilities.

51.     Defendants have created a nuisance by their discharge of PFOA, PFOS, and related chemicals into the Tennessee River, which has caused contamination of their water supply and caused Plaintiff damage, inconvenience, and harm as it would to any other reasonable person.

52.     The levels of toxic chemical contamination found in the WMEL water supply have created a condition that threatens the health and well-being of Plaintiff, and causes concern, and inconvenience to Plaintiff as it would to any other reasonable person.

53.     It was reasonably foreseeable, and in fact known to all Defendants, that their actions would place, and have placed, Plaintiff in immediate risk of physical harm. The nuisance has caused, and will continue to cause, emotional distress and physical harm until it is satisfactorily abated.

54.     Therefore, Plaintiff claims money damages in the amount that will fairly and reasonably compensate him for the harm caused by Defendants. In addition, Plaintiff claims damages for mental anguish and pain and suffering, in an amount to be determined by the jury that are fair and reasonable in consideration of the nature, severity, and length of time of the nuisance caused by Defendants.

## COUNT III
## FRAUDULENT CONCEALMENT

55.     Defendants fraudulently concealed information with respect to the water contamination levels and the ability to consume the water provided by Defendants.

56.     Defendants had information that the water they provided was contaminated at a dangerous level with PFOS, PFOA and other contaminants, and still deny this fact until the present date.

57.     Defendants further fraudulently withheld and concealed information about the substantial health risks associated with drinking and using the contaminated water in any capacity.

58.     The concealment of information by Defendants about the health risks of consuming contaminated water was intentional, and the representations made by Defendants were known by Defendants to be false.

59.     Plaintiff relied upon the representations of the Defendants and was unaware of the substantial risks of consuming and using contaminated water regularly, which Defendants concealed from the public.

60.     As a direct and proximate result of Defendants' actions, omissions, and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT IV
## WANTONNESS AND PUNITIVE DAMAGES

61.     Defendants owe Plaintiff a duty to exercise due and reasonable care in the manufacturing, use, and disposal operations to prevent the discharge of toxic chemicals, including PFOA, POFS, and related chemicals into the water supply and onto Plaintiff's property.

62.     In breaching the duties described above, Defendants acted in a wanton, willful, and reckless manner.

63.     Defendants knew or should have known the danger to Plaintiff created by their conduct, practices, actions, and inactions.

64.     Defendants knew or should have known the probable impact, harm, damage, and injury their conduct would have on Plaintiff.

65.     Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard for Plaintiff's property and Plaintiff's health.

66.     Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future.

## RELIEF DEMANDED

**WHEREFORE, PREMISES CONSIDERED**, as the proximate cause of the foregoing wrongful acts, breaches of standard of care, and willful violations of the law, Plaintiff seeks an award of the following relief:

> A.     Compensatory and punitive damages in excess of the jurisdictional limits of this Court in such a sum as the trier of fact shall award based upon the wrongdoings alleged in this complaint;

B.     Issue an injunction requiring Defendants to remove their chemicals from the water supplied to Plaintiff and prevent these chemicals from continuing to contaminate Plaintiff's water supplies;

C.     Award attorney fees, costs, and expenses incurred in connection with the litigation of this matter; and

D.     Any such further, different or additional relief to which Plaintiff may be entitled to in the premises.

**<u>PLAINTIFFS DEMAND TRIAL BY A STRUCK JURY</u>**

RESPECTFULLY SUBMITTED,

*/s/ D.G. Pantazis, Jr.*
D.G. Pantazis, Jr.
Dennis G. Pantazis
Patrick L. Pantazis
Evan D. Pantazis

*Attorneys for Plaintiff*

**<u>OF COUNSEL</u>**:
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: dgp@wigginschilds.com
dgpjr@wigginschilds.com
ppantazis@wigginschilds.com
edp@wigginschilds.com

## <u>SERVE DEFENDANTS BY CERTIFIED MAIL AT</u>

West Morgan-East Lawrence Water and Sewer Authority
2547 Kirby Bridge Road
Decatur, Alabama 35603

3M Company
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Dyneon, L.L.C.
I-94 and McKnight Road
St. Paul, Minnesota 55144

Daikin America, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104